UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VY PHAM,<br>a/k/a "msvy_crypto",<br><br>Defendant | ) Criminal No.   24cr10137<br>)<br>) Violation:<br>)<br>) <u>Count One</u>:<br>) Conspiracy to Commit Market Manipulation,<br>) Conduct an Unlicensed Money Transmitting<br>) Business, and Commit Wire Fraud<br>) (18 U.S.C. § 371)<br>)<br>) <u>Forfeiture Allegation</u>:<br>) (18 U.S.C. § 981(a)(1)(C) and<br>) 28 U.S.C. § 2461)<br>)<br>) Unlicensed Money Transmitting<br>) <u>Forfeiture Allegation</u>:<br>) (18 U.S.C. § 982(a)(1))<br>) |

INFORMATION

At all times relevant to this Information:

<u>General Allegations</u>

1.      Defendant VY PHAM ("PHAM"), also known as "msvy_crypto", lived in California.

2.      Co-conspirator 1 ("CC 1") lived in Washington.

3.      Co-conspirator 2 ("CC 2") lived in Texas.

4.      Co-conspirator 3 ("CC 3") lived in the United Kingdom.

5.      Russell Armand ("Armand"), also known as "Saitamaguru1", lived in Texas.

6.      Maxwell Hernandez ("Hernandez"), also known as "MaxEquation", lived in Massachusetts.

7.      PHAM, CC 1, CC 2, CC 3, Armand, and Hernandez promoted and developed Saitama.

8.      Saitama was a cryptocurrency company created in or about May 2021 and incorporated in Massachusetts on or about August 24, 2021.    Saitama promoted a cryptocurrency token that operated on the Ethereum blockchain (the "Saitama Token") and purported to create multiple products that could be used with the Saitama Token.    The Saitama Token was a security.

9.      Co-conspirator 4 ("CC 4") lived in Australia.

10.      PHAM and CC 4 promoted and developed Robo Inu Finance.

11.      Robo Inu Finance ("Robo Inu") was a cryptocurrency company created in or about 2022.    Robo Inu promoted a cryptocurrency token that operated on the Ethereum blockchain (the "Robo Inu Token").    Robo Inu purported to create multiple products that could be used with the Robo Inu Token, including the RoboNFT Marketplace and the RoboEx cryptocurrency exchange. The Robo Inu Token was a security.

12.      Company 1 was a company that operated both inside and outside the United States and purported to offer "market making" services for cryptocurrencies, such as the active monitoring of cryptocurrency trading and price fluctuations, trading in the cryptocurrency to capitalize on price fluctuations, and related consulting services.

<u>Background</u>

13.      Virtual currency is a digital asset or digital representation of value that can be electronically traded and exchanged online.    Virtual currency is not backed or insured by a central bank and its value may or may not be tied to or secured by a fixed asset.    Cryptocurrency is a subset of virtual currency that utilizes blockchain technology.

14.    Title 31, United States Code, Section 5330, provides that "[a]ny person who owns or controls a money transmitting business shall register the business" with "the Secretary of the Treasury."    RoboEx, a cryptocurrency exchange—which was an electronic forum that facilitated the purchase, sale, and exchange of cryptocurrencies—was a "money transmitting business."

<u>The Saitama Conspiracy and Scheme to Defraud</u>

15.    Beginning in or about June 2021 and continuing through at least August 2021, PHAM, CC 1, CC 2, CC 3, Armand, and Hernandez conspired with others known and unknown to the U.S. Attorney to artificially inflate the price of Saitama Tokens through manipulative trading and false and misleading statements.    The object of the Saitama conspiracy and of the scheme to defraud was to commit market manipulation and wire fraud.    The principal purpose of the Saitama conspiracy and of the scheme to defraud was for the conspirators to enrich themselves.

<u>Manner and Means of the Saitama Conspiracy and Scheme to Defraud</u>

16.    Among the manner and means by which PHAM, CC 1, CC 2, CC 3, Armand, Hernandez, and others known and unknown to the U.S. Attorney carried out the Saitama conspiracy and scheme to defraud were the following:

    a.    Engaging in manipulative trading of Saitama Tokens to create actual or apparent trading volume, thereby inducing others to trade Saitama Tokens, and inflate the price of Saitama Tokens; and

    b.    Soliciting investors to buy Saitama Tokens through the Saitama website as well as through other online marketing and messaging applications such as Telegram, Twitter, Instagram, and YouTube.

3

Overt Acts in Furtherance of the Saitama Conspiracy and the Scheme to Defraud

17.    On or about various dates between in or about June 2021 and in or about August 2021, PHAM, CC 1, CC 2, CC 3, Armand, Hernandez, and others known and unknown to the U.S. Attorney committed and caused to be committed the following overt acts, among others, in furtherance of the Saitama conspiracy and the scheme to defraud.

18.    PHAM, CC 1, CC 2, CC 3, Armand, and Hernandez coordinated a series of manipulative trades in Saitama Tokens, including through messages exchanged in a private Telegram chatroom named "Detective Saitama".

19.    For example, on or about July 3, 2021, at the following approximate times, the conspirators exchanged the following messages, among others:

a.    At 1:48 p.m., PHAM messaged, "But how much are we gonna pump now?" to which Armand responded, "We will create an illusion of massive buys and new holders as [Telegram] gets flooded" and "It'll incite ppl to buy more."

b.    At 1:50 p.m., PHAM messaged, "What is the amt [amount] to go in?" to which Armand later responded, "2-3 trill [trillium] tops at a time."

c.    At 2:22 p.m., Armand messaged, "OK watch [Telegram] now", to which CC1 responded, "Okay ready", CC 3 responded, "Okay", Hernandez responded, "ok", CC 2 responded, "Ok", and PHAM responded, "ok".

d.    At 2:29 p.m., CC 1 messaged, "Round 2 start now!", to which Hernandez responded, "bought a few times", and CC 3 responded, "Done second" and "Buying".

e.    At 2:54 p.m., PHAM messaged, "this is where new holders will get attracted to and give people confidence."

f.    At 4:19 p.m., Armand messaged, "If nothing else we did create hype and added holders", and later messaged, "Holders are increasing nicely and distribution is looking much better", "We will just have to coordinate our buys closely", and "the idea is to keep the chart trending upward to generate traction and stability. Will keep ppl from wanting to sell and will instead buy more".

<u>The Robo Inu Conspiracy and Scheme to Defraud</u>

20.    Beginning in or about 2022 and continuing through at least March 2024, PHAM, CC 4, and others known and unknown to the U.S. Attorney conspired to artificially inflate the price of the Robo Inu Token through manipulative trading, false and misleading statements, and the operation of an unlicensed cryptocurrency exchange.    The objects of the Robo Inu conspiracy and the scheme to defraud were (1) to commit market manipulation, (2) to conduct an unlicensed money transmitting business, and (3) to commit wire fraud.    The principal purpose of the Robo Inu conspiracy and of the scheme to defraud was for the conspirators to enrich themselves.

<u>Manner and Means of the Robo Inu Conspiracy and Scheme to Defraud</u>

21.    Among the manner and means by which PHAM, CC 4, and others known and unknown to the U.S. Attorney carried out the conspiracy and the scheme to defraud were the following:

a.    Soliciting investors to buy Robo Inu Tokens through the Robo Inu website and social media platforms such as Twitter and YouTube;

b.    Creating and operating an unlicensed money transmitting business that allowed users to buy and sell Robo Inu Tokens and other cryptocurrencies;

c.    Developing a plan to engage in manipulative trading of Robo Inu Tokens;

d.      Developing a plan to solicit additional investors to buy Robo Inu Tokens based on false and misleading statements and manipulative trading of Robo Inu Tokens; and

e.      Coordinating their activities through encrypted messaging applications such as Telegram.

<u>Overt Acts in Furtherance of the Robo Inu Conspiracy and Scheme to Defraud</u>

22.      Between in or about 2022 and in or about March 2024, PHAM and CC 4, together with others known and unknown to the U.S. Attorney, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy and the scheme to defraud:

a.      Beginning in 2022, Robo Inu had an account on the X social media platform with the username "@RGI_info".

b.      Beginning in 2022, PHAM advertised Robo Inu as a cryptocurrency company on the Robo Inu website.

c.      Beginning in 2022, PHAM and CC 4 caused manipulative trades in the Robo Inu Tokens, including by paying Company 1 to buy Robo Inu Tokens on cryptocurrency exchanges, thereby artificially inflating the apparent trading volume of Robo Inu Tokens.

d.      On or about December 17, 2022, PHAM posted a video on YouTube, entitled "Short Demo of RoboDex by our CEO", in which PHAM recorded herself using the RoboEX cryptocurrency exchange.

e.      On or about November 3, 2023, PHAM used her personal X account ("@msvy_crypto") to post a promotion for the Robo Inu "exchange" stating, "we aim to become the cheapest in terms of network fees."

      f.     On or about January 29, 2024, PHAM and CC 4 published on X that they were "joining force[s]" with the goal of making "life changing money" and stated, "we have our own exchange."

      g.     On or about February 8, 2024, PHAM and CC 4 created a group chat thread using Telegram, an encrypted messaging application.

      h.     On or about February 9, 2024, CC 4 sent a Telegram message to PHAM stating, "what RBIF needs now is trading volume and more holder growth to break out."

      i.     On February 12, 2024, CC 4 sent a Telegram message to PHAM stating, "a project without volume will die day by day; new investors will only look at volume to decide whether to invest or not" and proposed a "solution" that included "pump price, draw beautiful charts, increase volume appropriately . . . ."

      j.     On February 12, 2024, PHAM sent a Telegram message to CC 4 stating that the plan was to "instil[l] the hype and fomo elements" as had previously been done "successfully at saitama."

      k.     On February 13, 2024, PHAM sent a Telegram message to CC 4 stating, "Next step is to hype and pump."

      l.     On or about February 14, 2024, PHAM posted on X stating, "Getting rich in crypto isn't happened by chance. It's a rare opportunity $RBIF" and "Now you want to miss $RBIF [] You deserve to be poor."

      m.     On or about February 16, 2024, PHAM published on X that PHAM had previously led the "#SaitamaWolfPack" and stated, "let's watch everything slowly unfold in the

coming weeks/months and what the right leadership with passion can do and maybe I will make that history again."

        n.     On or about February 16, 2024, PHAM sent a Telegram message to CC 4 describing the plan to "pass the information to [online influencers] prior the announcement.   Once we announce, they will follow our call and release everything from all channels.   While at the same time, we will also push from our coordinated buy.   The existing community will surely fomo."

        o.     On or about February 27, 2024, PHAM, CC 4, and others participated in a Zoom video conference call during which PHAM and CC 4 discussed their plan to make manipulative trades of Robo Inu Tokens.   For example:

        i.   PHAM and CC 4 were asked, "you guys have a plan in place, hopefully to include me [ . . . ] with whatever capital we decide to provide you guys for the coin, it's going to be a small group of us that are going to coordinate the buys to make sure the volume goes up and we all make the money; that's the plan?"

        ii.   PHAM responded, "ya" and asked, "where do you see yourself fit into this project?"

        iii.   PHAM and CC 4 were then asked, "it sounds like you have a plan in place basically to run back kinda like the Saitama playbook.   Coordinated buys you spread them across the wallets. Obviously that's key to pushing the volume and the price, attracting new buys, we love that plan. [ . . .]   I was just wondering what is your timeline looking like for this?"

iv. PHAM responded, "We're already ready" and reiterated that the plan was to "go in and push the volume and causing fomo."

## COUNT ONE
Conspiracy To Commit Market Manipulation, Conduct an
Unlicensed Money Transmitting Business, and Commit Wire Fraud
(18 U.S.C. § 371)

The U.S. Attorney charges:

23.     The U.S. Attorney re-alleges and incorporates by reference paragraphs 1, 9 through
14, and 20 through 22(o)(iv) of the Information.

24.     From at least in or about 2022 to at least in or about March 2024, in the District of
Massachusetts and elsewhere, the defendant,

VY PHAM, a/k/a "msvy_crypto",

conspired with others known and unknown to the U.S. Attorney to:

a.     commit market manipulation, that is, knowingly and willfully, by the use of the
mails and any means and instrumentality of interstate commerce, directly and indirectly to effect
a series of transactions in a security not registered on a national exchange, to wit, the Robo Inu
Token, creating actual and apparent active trading in such security, and raising and depressing the
price of such security, for the purpose of inducing the purchase and sale of such security by others,
in violation of Title 15, United States Code, Sections 78i(a)(2) and 78ff(a);

b.     conduct an unlicensed money transmitting business, that is, knowingly to conduct,
control, manage, supervise, direct, and own all or part of an unlicensed money transmitting
business affecting interstate and foreign commerce that failed to comply with the money
transmitting business registration requirements under Title 31, United States Code, Section 5330

and regulations prescribed thereunder, in violation of Tile 18, United States Code, Sections 1960(a) and (b)(1)(B); and

      c.     commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

      All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

24.     Upon conviction of one of more of the offenses in violation of Title 18, United States Code, Section 371, relating to conspiracy to commit market manipulation and wire fraud, as set forth in Count One, the defendant,

VY PHAM, a/k/a "msvy_crypto",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

25.     If any of the property described in Paragraph 24, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 24 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

12

## UNLICENSED MONEY TRANSMITTING BUSINESS FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

26.    Upon conviction of the offense in violation of Title 18, United States Code, Section 371, relating to conspiracy to conduct an unlicensed money transmitting business, set forth in Count One, the defendant,

VY PHAM, a/k/a "msvy_crypto",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

27.    If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

JOSHUA S. LEVY
ACTING UNITED STATES ATTORNEY


By:  */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS